**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOSELITO CANETE TUALLA,

      Petitioner,

v.                                                    Case No. 8:21-cv-656-CEH-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner, a Florida prisoner, initiated this action by filing a petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1), an appendix with exhibits (Doc. 1-1), and memorandum of law (Doc. 1-2). Respondent filed a response opposing the petition (Doc. 14), to which Petitioner replied (Doc. 18). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by Amended Felony Information with two counts of lewd and lascivious molestation involving two minor victims (Doc. 15-2, Ex. 1 at 22).[1] However, the State nol-prossed Count Two and pursued only Count One at

_____

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

trial (*Id.*, Ex. 1b at 383–84). The jury found Petitioner guilty as charged (*Id.*, Ex. 1 at 75). He was sentenced to 30 years in prison followed by life on sex offender probation (*Id.*, Ex. 1 at 90). The conviction and sentence were affirmed on appeal (Doc. 15-3, Ex. 4).

Petitioner filed a motion for postconviction relief under Rule 3.850, Fla.R.Crim.P., in which he raised three grounds of ineffective assistance of trial counsel and one ground of cumulative error by counsel (*Id.*, Ex. 10 at 100–33). Grounds One and Two were stricken with leave to amend, and the court reserved ruling on the remaining two grounds (*Id.*, Ex. 10 at 134–37). Petitioner filed an amended Rule 3.850 motion (*id.*, Ex. 10 at 143–73), which was denied (*Id.*, Ex. 10 at 175–205). The appellate court affirmed the denial of Grounds Two through Four but reversed the denial of Ground One and remanded the case to the state post-conviction court (*Id.*, Ex. 13).

After the case was remanded and an evidentiary hearing held on Ground One, the state post-conviction court denied Ground One (*Id.*, Ex. 15 at 393–507). The denial was affirmed on appeal (*Id.*, Ex. 18).

Petitioner filed his federal petition in this Court (Doc. 1) in which he alleges eight claims of ineffective assistance of trial counsel, two claims of trial court error, and a claim that the cumulative effect of counsel's errors rendered his trial fundamentally unfair.

2

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889–90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

A. Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of

a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

B. Exhaustion and Procedural Default

The writ of habeas corpus cannot be granted unless the petitioner has exhausted all available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v. Sec'y, Fla. Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. § 2254(b), (c)). Exhausting state remedies requires a petitioner to "fairly present" his claims in each appropriate state court "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). Moreover, to properly exhaust a claim, "the [petitioner] must have presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995)

Under the procedural default doctrine, a claim raised in a federal habeas petition is barred from review if the claim was not properly raised in state court and "the court to which the petitioner would be required to present [the] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1. To avoid a procedural default, a petitioner must show

5

"either cause for and actual prejudice from the default or fundamental miscarriage of justice from applying the default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

C. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires showing deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Petitioner must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

6

## III. ANALYSIS

**Ground One: Defense counsel was ineffective for failing to object to the vindictive sentencing issued by the lower court after the Petitioner refused to make any plea offers prior to the trial ending. (Doc. 1 at 12-14)**

Petitioner contends counsel was ineffective in failing to object when the trial court imposed a vindictive sentence after inserting itself into unsuccessful plea negotiations. He alleges the trial court asked five times if he would negotiate, repeatedly reminded him he would be sentenced to 25 years or life if convicted, and appeared exasperated every time that Petitioner refused to enter into plea negotiations. After Petitioner's conviction, the trial court imposed a 30-year prison sentence to be followed by lifetime sex offender probation. Petitioner argues the sentence was vindictive because it was based on his unwillingness to make any plea offers.

Petitioner concedes he did not present this claim in state court (Doc. 1 at 14). Because he cannot return to state court to present the claim in an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), it is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

Petitioner seeks to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit." *Martinez*, 566 U.S. at 14, 17. A petitioner shows that his defaulted claim is "substantial" under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014)).

*Martinez* does not excuse the default of Ground One because the underlying ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. In *Banner v. Sec'y, Fla. Dep't of Corr.*, 659 F. App'x 1005 (11th Cir. 2016), the Eleventh Circuit discussed how Florida courts review a claim alleging a vindictive sentence:

> Florida courts examine the totality of the circumstances to determine whether there is a "reasonable likelihood" that a sentence evidences reprisal by the trial court. *Wilson v. State*, 845 So. 2d 142, 156 (Fla. 2003). The factors considered include whether the trial judge initiated the plea discussion with the defendant; whether the judge urged the defendant to plead guilty or suggested his sentence "would hinge on future procedural choices, such as exercising the right to trial"; "the disparity between the plea offer and the ultimate sentence imposed"; and "the lack of any facts ... [to] explain the reason for the increased sentence other than that the defendant exercised his ... right to a trial." *Id.*

8

*Banner*, 659 F. App'x at 1101.

The record reveals that the trial court did not offer a plea, negotiate a plea, participate in the plea process, or seek to persuade Petitioner to take a plea. Rather, the trial court simply ensured that Petitioner understood the mandatory penalties he faced and understood the plea process (Doc. 15-2, Ex. 1a at 324–28). The trial court made it clear to Petitioner that although he had the right to make plea offers, he "[didn't] have to make any. . . ." (*Id.*, Ex. 1a at 325). Moreover, the trial court expressed that it could not "get involved in negotiations" but wanted to ensure Petitioner understood he had "the right to make offers." (*Id.*, Ex. 1a at 312).

Finally, even where a presumption of vindictiveness arises, it may be overcome by "objective information in the record" justifying the harsher sentence. *Wilson*, 845 So. 2d at 148 (quoting *United States v. Goodwin*, 457 U.S. 368, 374 (1982)). First, there is no evidence of a plea offer that was rejected. At most, the State "telegraphed that [it wouldn't] accept anything less than 20 years" but was waiting for Petitioner to make an offer of more than probation and time served (*Id.*, Ex. 1a at 316). Second, the statutory minimum sentence was 25 years imprisonment followed by life on sex offender probation (*Id.*, Ex. 1a at 313). Third, the trial court sentenced Petitioner to 30 years imprisonment followed by life on probation when Petitioner could have been sentenced to life in prison and only after the trial court heard during the sentencing hearing that Petitioner had two prior convictions involving sexual

9

offenses on minors and fled the State after hearing of the charges against him (*Id.*, Ex. 1a at 338, 343).

Because any objection to the sentence as vindictive would have been meritless, counsel was not ineffective for failing to make the objection. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . .") (citation omitted). Therefore, Petitioner's ineffective-assistance claim is not substantial under *Martinez*, and Ground One is barred from federal habeas review.

**Ground Two: The trial court committed reversible error when it allowed *Williams* Rule testimony into evidence at trial. This error violated the Petitioner's 14th Amendment right to due process, and his 6th Amendment rights [sic] to a fair trial under the U.S. Constitution. (Doc. 1 at 15-17)**

Petitioner contends the trial court erred by allowing the State to introduce *Williams* rule,[2] similar fact, evidence during Petitioner's trial. Specifically, the State introduced testimony from Petitioner's 25-year-old daughter that when she was between the ages of 6 and 12, Petitioner touched her multiple times in a similar manner and in similar circumstances as Petitioner allegedly touched the 10-year-old victim. Petitioner argues it was error to admit his daughter's testimony because her allegations were too remote from and dissimilar to the allegations of the victim, and her testimony became a feature. Finally, he contends admission of the evidence

---

[2] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

violated his rights to due process and a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution.

Respondent argues that Petitioner's claim is procedurally barred because Petitioner did not raise his federal constitutional claim during his direct appeal in state court (Doc. 14 at 41–44). The Court agrees. The record shows that Petitioner raised this claim on direct appeal in terms of state law, but not federal constitutional law (Doc. 15-3, Ex. 2 at 28–37). He now would be barred from raising this claim in a Rule 3.850 motion. Fla.R.Crim.P. 3.850(b), (c). As such, this claim is procedurally defaulted. Petitioner has failed to show either cause and prejudice from the default, or that a fundamental miscarriage of justice will result if the claim is not addressed on the merits. Therefore, he is not entitled to federal review of his federal claim.

To the extent Petitioner contends the state trial court erred under Florida law when it allowed the State to present his daughter's testimony, this contention is not cognizable on federal habeas review. "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court unless rulings deny petitioner fundamental constitutional protections). Thus, Petitioner's

11

contention that the trial court erred under state law in allowing the evidence is not

proper for the Court's consideration. Accordingly, Ground Two warrants no relief.

**Ground Three: Defense counsel provided ineffective assistance by failing to object to the verdict form and/or make a Judgement of Acquittal because the jury verdict form lacked a specific and separate finding of the victim's age and the Defendant's age. These sentencing factors were used to enhance the crimes charged to greater degrees of the underlying offenses without jury findings to support the enhancements. (Doc. 1 at 18-19)**

Petitioner contends counsel was ineffective in failing to move for a judgment

of acquittal because the verdict form failed to include a specific jury finding of

Petitioner's age and the victim's age at the time of the offense. He argues the special

jury finding was required on the verdict form to enhance his conviction from a third-

degree felony under Florida Statutes, Chapter 800.04(5)(d), to a life felony under

Chapter 800.04(5)(b). He asserts the remedy is to vacate his conviction for lewd and

lascivious molestation and enter a conviction of, and sentence him for, battery, the

next lesser included offense on the verdict form (Doc. 15-2, Ex. 1 at 75).

Respondent argues Ground Three is procedurally barred from federal review

(Doc. 14 at 25–28). Petitioner concedes he failed to present this claim of ineffective

assistance of trial counsel to the state courts (Doc. 1 at 20). However, Petitioner

again asserts entitlement to federal review under *Martinez* (*Id*.).

The trial court instructed the jury that:

> To prove the crime of Lewd or Lascivious Molestation, the State
> must prove the following three elements beyond a reasonable doubt:

12

1.  Nalinda Thach was less than 12 years of age.

2.  JOSELITO C. TUALLA in a lewd or lascivious manner, intentionally touched the breasts, genitals, genital area, buttocks, clothing covering the breasts, clothing covering the genitals, clothing covering the genital area, or clothing covering the buttocks of Nalinda Thach.

3.  JOSELITO C. TUALLA was 18 years of age or older at the time of the offense.

(Doc. 15-2, Ex. 1 at 62). The instruction for the crime of lewd or lascivious molestation informs the jury that the State must prove, among other elements, that at the time of the offense Petitioner was 18 or older and the victim was under 12. The jury found that Petitioner was guilty of this crime. By finding Petitioner guilty on the evidence presented, the jury necessarily found that at the time of the offense the victim was under 12 and Petitioner was 18 or older.

Additionally, the record supports a finding that Petitioner was 18 or older and the victim under 12. The offense occurred between November 22 and November 24 of 2012 (Doc. 15-2, Ex. 1 at 46; Ex. 1a at 163). The victim testified she was born on July 3, 2002, and she was 10 at the time of the offense (*Id.*, Ex. 1b at 571, 581). The victim's mother testified Petitioner was "in his late 40's" at the time of trial (*Id.*, Ex. 1b at 623). And Petitioner's daughter testified Petitioner was older than 18 when she was born in 1990 (*Id.*, Ex. 1b at 601–02). Thus, because the evidence established the ages of Petitioner and the victim, counsel was not deficient in failing to move for a

judgment of acquittal on the ground there was no specific finding of their ages by the jury.

Petitioner does not overcome the procedural default under *Martinez* because he fails to show his defaulted ineffective assistance of trial counsel claim is substantial. And Petitioner cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground Three is procedurally barred from federal review.

**Ground Four: Defense counsel was ineffective for advising Tualla not to testify in his own defense at trial to provide the jury with evidence of his actual innocence and to allow the jury to personally assess the Petitioner's credibility. (Doc. 1 at 20-22)**

Petitioner contends counsel was ineffective in advising him to not testify. He argues no reasonable attorney would have advised him to not testify because "[o]nly [his] live testimony at trial could negate the effect of" the victim's testimony that he had touched her inappropriately (Doc. 1 at 21). He asserts he would have been a credible witness, would have presented "evidence of his innocence," and was the only one who "could provide the jury with his defense theory that these charges were fabricated and patently false." (*Id.*). Without his testimony, he claims, "a trial loss was assured" because the victim's testimony and the State's evidence was not "challenged." (*Id.*).

14

Respondent argues Ground Four is procedurally barred from federal review (Doc. 14 at 29, 33). Petitioner concedes he failed to present this claim of ineffective assistance of trial counsel to the state courts (Doc. 1 at 20, 22). However, Petitioner again asserts entitlement to federal review under *Martinez* (*Id.*).

A defendant's right to testify at a criminal trial is a fundamental and personal right which cannot be waived by defense counsel. *See United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (*en banc*), *cert. denied*, 506 U.S. 842 (1992). In *Teague*, the Eleventh Circuit held that it is defense counsel's responsibility to advise the defendant of this right and the strategic implications and "that the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance [under *Strickland*]." *Id.* at 1534. *Teague* reasoned that an attorney's performance would be deficient under the first prong of the *Strickland* test if counsel refused to accept the defendant's decision to testify and would not call him to the stand or, alternatively, if defense counsel never informed the defendant of the right to testify and that the ultimate decision belonged to the defendant. *Id.* In *Teague*, the defendant's ineffective assistance of counsel claim was rejected because the trial court found that counsel had advised the defendant of his right to testify, had advised him he should not exercise that right and the defendant did not protest. *Teague*, 953 F.2d at 1535.

15

It is apparent from the state trial court's colloquy with Petitioner about his right to testify that Petitioner was well aware of his right to testify, that he and his attorney discussed it, that he acknowledged it was his decision not to testify and no one forced him to not testify, and he made no protest of counsel's alleged advice to not testify (Doc. 15-2, Ex. 1b at 628–30). Counsel's performance was not constitutionally deficient.

Moreover, "[a] decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

To the extent Petitioner contends that his attorney's advice to not testify was unreasonable, Petitioner's contention is likewise without merit. Petitioner asserts no reasonable attorney would have advised him to not testify because he would have made a credible witness and provided evidence of his innocence. But this vague and self-serving assertion is insufficient to support a claim of ineffective assistance of counsel. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[A] defendant cannot simply state that the testimony would have been favorable"). He was required

to allege the substance of his testimony. Therefore, because Petitioner has not made the requisite factual showing, his claim of ineffective assistance of counsel fails. *Johnson v. Alabama*, 256 F.3d 1156 (11th Cir. 2001) (mere speculation that missing witnesses would have been helpful is insufficient to meet a petitioner's burden of proof).

Even if counsel had advised him differently and Petitioner had testified that he did not touch the victim, he still cannot show prejudice under *Strickland* because he cannot demonstrate a reasonable likelihood that the outcome of the trial would have been different. While this statement would have conflicted with the testimony of two State witnesses that he touched the victim's vagina (*see* Doc. 15-2, Ex. 1b at 588, 622), it is speculative to assert that the jury would have credited his testimony over that of the other witnesses and acquitted him on this basis alone. Resolving conflicting testimony is a question to be determined by the trier of fact. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, any claim of prejudice because of counsel's advice is speculative and unsupported by record evidence. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Petitioner also contends that without his testimony, the victim's allegation that he touched her vagina was unchallenged. The record belies the contention. At trial, defense counsel challenged the inconsistencies in the victim's recollection of when

17

she told her mother about the allegation that Petitioner touched her and got the victim to admit "there's a lot that [she didn't] remember about this [incident]?" (*Id.*, Ex. 1b at 595–96). During his closing statement, defense counsel argued that the victim was not credible because the evidence proved the victim had a motive to fabricate her accusation after her mother discovered she had been looking at pornography on the internet (*Id.*, Ex. 1b at 665–69).

Because defense counsel presented a fabrication defense even without Petitioner's testimony, defense counsel was not ineffective for advising Petitioner to not testify. *Preston v. Sec'y Dep't of Corr.*, 745 F. App'x 835, 838 (11th Cir. 2018) ("[E]ven if counsel had misadvised Preston, he has not established — as he must — that there is no 'reasonable argument' that he did not suffer prejudice as a result. The facts that Preston says he would have testified to in order to support his claim of self-defense were largely duplicative of the balance of the evidence at trial."). Petitioner fails to establish that under these circumstances no reasonable lawyer would have advised Petitioner not to testify. *See United States v. Teague*, 953 F.2d at 1533 n.9 ("There are good tactical reasons why it may not be best for the defendant to testify in some circumstances. Some examples might be if the defendant might provide evidence of missing elements of the crime on cross-examination, if the defendant might be prejudiced by revelation of prior convictions, or if the prosecutor might impeach the defendant using a prior inconsistent statement.") (emphasis added).

18

Petitioner does not overcome the procedural default under *Martinez* because he fails to show his defaulted ineffective assistance of trial counsel claim is substantial. And Petitioner cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground Four is procedurally barred from federal review.

**Ground Five: Defense counsel was ineffective for failure to interview, depose, investigate, and call two material defense witnesses at trial. (Doc. 1 at 23-26)**

Petitioner contends counsel was ineffective in failing to investigate and call two witnesses, his mother Josefina Tualla, and his former girlfriend Maria Lopez. He asserts Mrs. Tualla's testimony would have rebutted Petitioner's daughter's, Cecile Tualla, testimony that Petitioner inappropriately touched her on three occasions while they were visiting Mrs. Tualla's home in South Carolina when Cecile was between the ages of 5 and 12. Specifically, Petitioner alleges Mrs. Tualla would have testified that (1) when Cecile was 5 and 6 years-old, Petitioner was in the Coast Guard and never left the base for any visits with his parents or daughter; (2) she was present in the house at all times during the visits with Petitioner and Cecile, and she never witnessed Petitioner inappropriately touch Cecile; and (3) Cecile never told her Petitioner was molesting her during the years she visited the house. And Petitioner alleges Ms. Lopez would have testified that Petitioner could not have inappropriately

19

touched Cecile while at Mrs. Tualla's home because Ms. Lopez was there and slept with Petitioner during each visit.

Following an evidentiary hearing, the state post-conviction court denied this claim (Doc. 15-3, Ex. 15 at 393–403). The state post-conviction court held that Petitioner failed his evidentiary burden because the witnesses were not called to testify at the evidentiary hearing, and their "affidavits" either were unsigned and unsworn or only addressed issues unrelated to Petitioner's case (*Id.*, Ex. 15 at 400). Thus, the claim warranted no relief because how the witnesses would have testified was speculative (*Id.*). Moreover, the court determined counsel was not deficient in failing to call the witnesses because the testimony at the evidentiary hearing revealed they were unavailable to testify, since counsel attempted but could not locate the witnesses, and the proposed impeachment testimony would not have been admissible under Florida law (*Id.*, Ex. 15 at 400–02).

The state post-conviction court's denial of the claim was reasonable. Petitioner presents no evidence that the witnesses would have testified as he suggests. *See Ashimi*, 932 F.2d at 650 ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted). Neither Mrs. Tualla nor Ms. Lopez testified during the state evidentiary

20

hearing. Ms. Lopez's affidavit attached to Petitioner's Rule 3.850 motion failed to address the visits in South Carolina (*Id.*, Ex. 15 at 257). And the letter allegedly from Mrs. Tualla was incomplete, unsigned, and unverified (*Id.*, Ex. 15 at 256). Petitioner therefore cannot obtain relief on this speculative claim. *See Johnson v. Alabama*, 256 F.3d at 1187 ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).

Even if the claim was not speculative, it would warrant no relief. "Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, ... we must defer to the state's construction of its own law.'" *Will v. Sec'y For Dep't of Corr.*, 278 F. App'x 902, 908 (11th Cir. 2008) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (emphasis and alteration in original). Here, the state post-conviction court determined the proposed testimony would have been inadmissible to impeach Cecile Tualla's testimony. This Court is bound by the state post-conviction court's interpretation of Florida law. *See id*. Accordingly, as Mrs. Tualla and Ms. Lopez's proposed testimony

would have been inadmissible, counsel cannot be deemed deficient for failing to call them to testify. *See Lorjuste v. Sec'y, Fla. Dep't of Corr.*, 2022 WL 4182536, at *9 (M.D. Fla. Sept. 13, 2022), *appeal dismissed sub nom. Lorjuste v. Sec'y, Dep't of Corr.*, 2022 WL 18283457 (11th Cir. Dec. 14, 2022) ("[C]ounsel cannot be deemed ineffective for failing to present inadmissible testimony.") (citations omitted).

The state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Five.

**Ground Six: Defense counsel was ineffective for failure to impeach the alleged victim at trial with her prior inconsistent statements made in her pre- trial deposition. (Doc. 1 at 27-31)**

Petitioner contends counsel was ineffective in failing to impeach the victim's testimony with prior inconsistent statements she made during her deposition. He alleges that during trial, the victim gave detailed testimony regarding the events on the night Petitioner molested her and regarding how she later revealed the incident to her mother. However, Petitioner alleges, during her deposition the victim testified she could not recall much of the incident or the events that followed. Petitioner argues had counsel impeached the victim with the prior inconsistent statements she

made during her deposition her credibility would have been diminished and the result of the trial would have been different.

In his amended Rule 3.850 motion in state court, Petitioner alleged counsel "did nothing during his cross examination of [the victim] to discredit her testimony" and should "have used all the available methods to impeach the [victim]" including using her "prior inconsistent statements." (Doc. 15-3, Ex. 10 at 152–59). In denying the claim, the state post-conviction court stated:

> The Defendant asserts that his counsel was ineffective for failing to impeach the victim, N.T. Counsel may impeach a witness by "introducing statements of the witness which are inconsistent with the witness's present testimony." § 90.608(1), Fla. Stat. (2013). The Defendant argues that N.T. should have been impeached when she stated in her trial testimony that she told her mother about the sexual battery about a week after it occurred, but in her deposition testimony, she stated she did not remember when she told her mother. The Defendant states that had N.T. been impeached, the jury may have acquitted him. This claim is facially sufficient, but it is refuted by the record. On cross-examination, counsel elicited from N. T. that she did not remember when she told her mother about the sexual battery. (See Exhibit C: Trial Transcript, p. 244). Ground Two is therefore denied.

(*Id.*, Ex. 10 at 177–78). The state appellate court affirmed the denial of this claim without explanation (*Id.*, Ex. 13).

The denial of this claim was reasonable for two reasons. First, the victim's testimony during her deposition was not truly inconsistent with her trial testimony. Petitioner asserts that during trial the victim remembered more details about the incident and what happened after the incident than she could remember during her

deposition. For example, he alleges that during the deposition the victim made a "bare bones allegation that [she] got cold and went over to the Petitioner's bed. . .and that's when [Petitioner] touched [her]," whereas at trial she testified "that the Petitioner invited her onto the air mattress he shared with his son versus earlier stating she went over on her own[,]" and that "[there were] two separate incidents involving these charges instead of just one." (Doc. 1 at 29).

When asked during her deposition "Are you okay to tell me what happened?", the victim answered:

> I was -- we went camping in the backyard in the big tent. There were my two cousins, [Petitioner] and his son, and I remember like at night I got cold so I went over to his bed and that's when he touched me.

(Doc. 15-3, Ex. 15 at 294–95). This testimony is consistent with the victim's testimony during trial that she woke up because it was cold and went over to Petitioner's bed (after he told her to come over), and that is when Petitioner touched her vagina (Doc. 15-2, Ex. 1b at 586–90). She further testified that she went back to her bed, later returned to Petitioner's bed because she was cold again, and Petitioner again touched her vagina (*Id*.).

In Florida, a prior statement of a witness is admissible to impeach credibility only if it is truly inconsistent with the trial testimony, or if there is a material difference between the two. *See Morton v. State*, 689 So. 2d 259, 264 (Fla. 1997), *receded from on other grounds by Rodriguez v. State*, 753 So. 2d 29 (Fla. 2000) (a party

may attack the credibility of a witness by introducing statements of the witness inconsistent with the witness's present testimony, the statement, however, "should be truly inconsistent, and caution should be exercised in permitting impeachment of a witness who has given favorable testimony but simply fails to recall every detail unless the witness appears to be fabricating."). Because during trial the victim included extra details that Petitioner asked her to come over to his bed, she twice went over to Petitioner's bed, and Petitioner touched her both times, does not mean that the testimony was inconsistent with or materially different from her deposition testimony. Impeachment of the victim with her deposition testimony, therefore, would likely have been inappropriate because the testimony was not truly inconsistent with her trial testimony. This is especially true where the additional details in the trial testimony were not sought by defense counsel during the victim's deposition (Doc. 15-3, Ex. 15 at 289–99).

Second, even if there were inconsistencies between the victim's deposition and trial testimony, defense counsel nonetheless effectively cross-examined the victim by getting her to admit she did not remember how long it was before she told her mother about Petitioner touching her (Doc. 15-2, Ex. 1b at 595). Moreover, defense counsel induced the victim to admit that it was "fair to say there's a lot that [she can't] remember about this[.]" (*Id.*, Ex. 1b at pp. 595–96). As a result, defense counsel was able to argue during closing statements that "[the victim] is a girl, who

25

by her own admission on the stand, does not remember much" (*Id*., Ex. 1b at p. 665).

Whether in Petitioner's case counsel would have been more effective had he impeached the victim with the alleged inconsistent statements regarding details of the incident requires an inappropriate use of hindsight to assess the effectiveness of counsel. *See Delap v. Dugger*, 890 F.2d 285, 298 (11th Cir. 1989). The decision to cross-examine a witness and the manner in which the cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)). Further, counsel is strongly presumed to make decisions in the exercise of professional judgment. *See Strickland*, 466 U.S. at 690. Petitioner has not overcome the strong presumption that counsel's performance was reasonable and adequate. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). He therefore has failed to show that counsel's performance was constitutionally deficient in failing to impeach the victim with her deposition testimony.

The state court's adjudication of this claim did not involve an unreasonable application of *Strickland* and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Six.

**Ground Seven: Defense counsel provided ineffective assistance by failing to file a pre-trial motion to have the alleged victim examined for mental competency and to obtain an expert's determination as to whether N.T. could testify reliably and trustworthy at trial. (Doc. 1 at 31-34)**

Petitioner contends counsel was ineffective in failing to move the trial court to have the victim examined to determine whether she was "mentally competent to testify." (Doc. 18 at 21). He also contends counsel was ineffective in failing to hire an expert to determine whether the victim's testimony would be reliable and trustworthy. He asserts the victim's inability to recall details of the incident during her deposition should have alerted counsel that the victim's testimony was not reliable or trustworthy and that a competency examination and an expert witness were necessary. He alleges an expert would have learned during a competency examination that the victim was untruthful during her deposition when she testified she voluntarily told her mother about Petitioner touching her. And, according to Petitioner, an expert would have testified the victim was motivated to lie and unable to testify truthfully.

Respondent argues Ground Seven is procedurally barred from federal review (Doc. 14 at 36). Petitioner concedes he failed to present this claim of ineffective assistance of trial counsel to the state courts (Doc. 1 at 33). However, Petitioner again asserts entitlement to federal review under *Martinez* (*Id.*).

In Florida, a trial court has inherent power to order a psychological evaluation of the victim of a crime. *Camejo v. State*, 660 So. 2d 242, 243 (Fla. 1995). And

"credibility may be a reason to order ... [a psychological] examination [of the victim], but only if *there is strong and compelling evidence*." *Id*. (finding that the defendant in a sexual battery prosecution must "present sufficiently compelling evidence to justify ordering the examination for the purpose of helping him attack her veracity and credibility.") (emphasis in original). However, "[t]he mere fact that a witness is retarded or may have a history of mental problems is ... not enough to compel ... [a psychological] evaluation." *Simmons v. State*, 683 So. 2d 1101, 1105 (Fla. 1st DCA 1996). "In the absence of any statutory or rule authority for compelling the victim to submit to any type of test or examination, and the lack of any evidence whatsoever to support a compelling need for the intrusion," a court may not order testing to be performed on a victim. *State v. Brewster*, 601 So. 2d 1289, 1291 (Fla. 5th DCA 1992).

Petitioner has not demonstrated that he is entitled to relief on this claim. Defense counsel did not have a basis to ask the state court for psychological testing of the victim. There is no indication that the victim was incompetent to testify. At the time of trial, the victim was thirteen (Doc. 15-2, Ex. 1b at 571).[3] She took the oath to

---

[3] "The principle is well settled that a child's competency is fixed when he or she is offered as a witness, and not when the facts testified to occurred." *Griffin v. State*, 526 So. 2d 752, 755 (Fla. 1st DCA 1988) (*citing Kentucky v. Stincer*, 582 U.S. 730, 742–43 (1987); *State v. McIntosh*, 475 So. 2d 973 (Fla. 4th DCA 1985), *decision quashed on other grounds in* 496 So. 2d 120 (Fla. 1986); *Morey, Competency of Child Victim*, 40 U.Miami L.Rev. at 262).

testify truthfully (*Id.*, Ex. 1b at 570). The victim's testimony indicates that she was aware of her surroundings, understood the significance of the proceedings, understood the difference between telling a lie and telling the truth, and that she gave appropriate responses and testimony during trial (*Id.*, Ex. 1b at 570–96). Because the victim's trial testimony was coherent and appropriate, the victim answering "I don't remember" to some questions she was asked during her deposition (*see* Doc. 15-3, Ex. 10 at 164–71) does not amount to a compelling or extreme circumstance which would establish the need for a psychological evaluation. *See Jones v. Crosby*, 2006 WL 890003, at *9–10 (M.D. Fla. Mar. 31, 2006) (finding that a psychological evaluation of the victim was not warranted because nothing in the record indicated that the victim's behavior was irrational where the victim was aware of her surroundings and her testimony was coherent, relevant, and appropriate despite her history of mental illness). Petitioner has not shown that trial counsel acted deficiently in failing to request a psychological evaluation or that had counsel requested an examination, it would have been granted.

Concerning counsel's failure to retain an expert to determine if the victim was competent to testify and motivated to lie and unable to testify truthfully, Petitioner's assertions as to what an expert would have concluded had the expert examined the victim, are purely speculative. This speculation, unsupported by any evidence, is insufficient to show that counsel's failure to secure the services of an expert was

deficient. Petitioner's speculation is also insufficient to show that there is a reasonable probability the expert would have testified that the victim was not competent to testify, or that the victim was motivated to lie and unable to testify truthfully. Petitioner's unsupported contention that counsel should have called an unnamed expert to testify, without more, is insufficient to warrant relief. *See, e.g., Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."); *Ashimi*, 932 F.2d at 650 ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted); *Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (holding that state court reasonably rejected *Strickland* claim because "[i]t [was] speculative that an expert witness would in fact have testified" the way petitioner wanted). "[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009).

Petitioner does not overcome the procedural default under *Martinez* because he fails to show his defaulted ineffective assistance of trial counsel claim is substantial. And Petitioner cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground Seven is procedurally barred from federal review.

**Ground Eight: The trial court erred when it allowed into evidence the alleged victim's out-of-court statements made to her mother about these allegations at trial. This error violated the Petitioner's 14th Amendment right to due process, and his 6th Amendment rights to a fair trial under the U.S. Constitution. (Doc. 1 at 34-37)**

Petitioner contends his right to due process and a fair trial were violated when the state trial court allowed the victim's out-of-court statements to her mother to be admitted.[4] Respondent argues to the extent the claim attempts to assert a denial of federal due process and a fair trial, Petitioner failed to exhaust it in state court, because he failed to present it as a federal claim on direct appeal of his conviction, and the claim is now procedurally defaulted (Doc. 14 at 58–60). The Court agrees.

The state court record demonstrates that in Petitioner's Initial Brief on direct appeal, he argued the trial court erred in admitting the child hearsay statements

---

[4] The victim's mother, Valinda Tes, testified that when she asked the victim if someone had touched her, the victim told her Petitioner had touched her vagina when camping inside the tent (Doc. 15-2, Ex. 1b at 621–22).

because the statements did not meet the criteria for admission under Section 90.803 (23), Florida Statutes and Florida Supreme Court law (Doc. 15-3, Ex. 2 at 37–41). He framed his claim of trial court error solely in terms of state law without making any reference to federal law. In the body of his argument, he made no reference to the United States Constitution or federal law, and he cited no federal cases (*Id.*). Nothing in Petitioner's brief put the state court on notice that the issue was presented as a federal due process claim and denial of a fair trial. Thus, Petitioner's claim of trial court error regarding admission of child hearsay was not fairly presented to the state court as a federal constitutional claim. *Cf.*, *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard).

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claim would be procedurally barred under Florida law. *See Rodriquez v. State*, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Because Petitioner cannot return to state court to exhaust a

federal claim in a second direct appeal, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner has not established that an exception applies to overcome the default. Therefore, Ground Eight is procedurally barred from review.

**Ground Nine: Defense counsel provided ineffective assistance by failing to strike a biased juror from the panel prior to trial. (Doc. 1 at 37-39)**

Petitioner contends counsel was ineffective in failing to move to strike James Nethero from the jury as biased against Petitioner. Petitioner asserts *voir dire* revealed Nethero had three children and three grandchildren, checked for pedophiles online before he went out on Halloween with the kids, stated he did not want to make a decision in this case, and admitted that it would be hard for him to put aside his bias against pedophiles. Petitioner argues counsel's failure to move to strike Nethero deprived him of his right to be tried by an impartial jury.

Respondent argues Ground Nine is procedurally barred from federal review (Doc. 14 at 36, 41). Petitioner concedes he failed to present this claim of ineffective assistance of trial counsel to the state courts (Doc. 1 at 37). However, Petitioner again asserts entitlement to federal review under *Martinez* (*Id.*).

Petitioner was entitled to an impartial jury. *Turner v. Murray*, 476 U.S. 28, 36 n.9 (1986) ("The right to an impartial jury is guaranteed by both the Sixth Amendment ... and by principles of due process."). Nonetheless, to prevail on his

33

ineffective assistance of counsel claim, Petitioner first must demonstrate that Nethero was actually biased against him.[5] *See Smith v. Phillips*, 455 U.S. 209, 215 (1981).

In this matter, any allegation of bias is refuted by the *voir dire* of Nethero's fitness for jury service. Nethero admitted that he had children and grandchildren, his "heart sunk" when he heard the charge, he looked for pedophiles online before taking his kids out on Halloween, and that "it would be hard to put away what" he knows if he served on the jury (Doc. 15-2, Ex. 1b at 446, 519–20). Nonetheless, Nethero acknowledged that "in a case like this. . .I know you can be falsely accused." (*Id.*, Ex. 1b at 519). And he stated he believed he could be "a good juror for a case like this" because he is "basically a fair and honest person." (*Id.*, Ex. 1b at 520).

Petitioner's characterization of Nethero's testimony is refuted by the record. Instead, the record of *voir dire* testimony reveals that Nethero was not openly biased. Although Nethero had grown children and grandchildren and took action to protect them from pedophiles, he stated he could serve on the jury because he could be fair

---

[5] In Florida, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." *Smith v. State*, 28 So. 3d 838, 859 (Fla. 2009) (citing *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984)). *See also, Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) ("[T]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").

and knew the allegations may be false. "It is sufficient if the jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court." *Skillings v. U.S.*, 561 U.S. 358, 398–99 (2010) (internal quotations and citations omitted). Here, Nethero agreed he could do that. Consequently, Petitioner cannot show Nethero was actually biased against him. Thus, his ineffective assistance of counsel claim is meritless.

Petitioner does not overcome the procedural default under *Martinez* because he fails to show his defaulted ineffective assistance of trial counsel claim is substantial. And Petitioner cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground Nine is procedurally barred from federal review.

**Ground Ten: Defense counsel was ineffective for failure to file a timely motion for new trial. (Doc. 1 at 40-43)**

Petitioner contends counsel was ineffective in failing to move for a new trial. He argues the motion would have been granted "because the weight of the evidence did not support the guilty verdict." (Doc. 1 at 41). He asserts the weight of the evidence favored the defense because no evidence corroborated the victim's testimony, and the victim had a motive to lie to excuse her own actions of looking at "sex sites on the internet." (*Id.* at 42).

The state postconviction court rejected this claim (Doc. 15-3, Ex. 10 at 178). It stated that under Florida law, "[a] motion for new trial is appropriate when the verdict is decided by lot, the verdict is contrary to the law or weight of the evidence, or if new evidence would probably change the verdict and could not have been discovered before trial using due diligence." (*Id.*). It found that Petitioner identified no new evidence, and "[b]ased on the testimony of [the victim]," "the verdict was not contrary to the law or the weight of the evidence[.]" (*Id.*). Thus, the court decided because a motion for new trial "would not have been meritorious[,]" the claim "fail[ed] both prongs of *Strickland*." (*Id.*).

The rejection of this claim was reasonable. A claim that the verdict is contrary to the weight of the evidence may be raised in a motion for new trial. Fla.R.Crim.P. 3.600(a)(2). In reviewing a motion for new trial brought on this basis, "the trial court must exercise its discretion to determine 'whether a greater amount of credible evidence supports' an acquittal." *Ferebee v. State*, 967 So. 2d 1071, 1073 (Fla. 2d DCA 2007) (quoting *Geibel v. State*, 817 So. 2d 1042, 1044 (Fla. 2d DCA 2002)). Under Rule 3.600(a)(2), the trial judge may "weigh the evidence and determine the credibility of witnesses..." *Id.* (quoting *Tibbs v. State*, 397 So. 2d 1120, 1123 n.9 (Fla. 1981)). The trial court has broad discretion in its review. *Moore v. State*, 800 So. 2d 747, 748 (Fla. 5th DCA 2001).

The state post-conviction court determined, upon reviewing the evidence at Petitioner's trial, that a motion for new trial asserting the verdict was contrary to the weight of the evidence would have failed under applicable Florida law. This decision must be given deference. *See Herring*, 397 F.3d at 1354–55. And the decision is supported by the evidence.[6] Counsel cannot be deemed ineffective for failing to file a meritless motion. *Brownlee*, 306 F.3d at 1066.

The state post-conviction court has made clear that the motion for a new trial proposed by Petitioner would not have succeeded under applicable state law. Petitioner does not show that the state court's rejection of his ineffective assistance of counsel claim was an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Accordingly, Petitioner does not show entitlement to relief on Ground Ten.

**Ground Eleven: The cumulative effect of defense counsel's errors at trial rose to the level of ineffective assistance of counsel as defined under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (Doc. 43-44)**

Petitioner contends that the cumulative effect of trial counsel's alleged errors "denied [him] his constitutional rights to due process, to a fair and impartial trial[,] and to the effective assistance of counsel under the U.S. Constitution." (Doc. 1 at

---

[6] The victim testified how Petitioner touched her while in the tent. The victim's mother testified the victim told her when and where she was touched by Petitioner. And Petitioner's adult daughter gave similar fact testimony that Petitioner had touched her when she was a child.

44.) The state postconviction court rejected this claim (Doc. 15-3, Ex. 10 at 179). It held that, "[b]ecause the Court has denied all of the individual claims in the instant motion, Ground Four is denied." (*Id.*)

The rejection of this claim was reasonable. "Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). A cumulative-error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Here, there are no individual errors to accumulate, so Petitioner's cumulative-error claim necessarily fails. *See Otero v. Sec'y, Dep't of Corr.*, No. 8:19-cv-39-SDM-AEP, 2022 WL 4095069, at *8 (M.D. Fla. Sept. 7, 2022) ("Because ground one is procedurally barred from federal review and ground two lacks merit, Otero proves no error to accumulate to show cumulative prejudicial effect."). Accordingly, Ground Eleven is denied.

Any claims not specifically addressed herein have been deemed to be without merit.

Accordingly:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk of the Court is directed to enter judgment against Petitioner and close this case.

2. This Court should grant an application for a Certificate of Appealability (COA) only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And because Petitioner is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida on March 18, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner, *pro se*
Counsel of Record

39